IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| ALAN FEUERSTEIN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 04-134 |
| | : | |
| GEORGE R. SIMPSON | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                            September 30, 2013

On December 7, 2012, a jury returned a $6.6 million verdict against Defendant George R. Simpson in Plaintiff Alan Feuerstein's claims for libel and injurious falsehood. After trial, this Court ordered Feuerstein to show cause why the Court should not remit the verdict as excessive and/or not supported by the evidence. Feuerstein and Simpson responded to the Court's order, and Simpson also filed a "Motion to Set Aside the Verdict As Against the Weight of the Evidence," in essence asking for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). After review of the party's submissions and the trial record, the Court will deny Simpson's Motion, but will grant Simpson a new trial on damages unless Feuerstein remits $5.425 million of the jury's $6.6 million award.

**FACTS**

In July 2003, Simpson filed suit against an individual represented by Feuerstein, an attorney. While the lawsuit was pending, Simpson wrote to Feuerstein's client and stated Feuerstein is dishonest, is only interested in getting a fee, and has violated rules for which he could be disbarred. Sometime later, Simpson created and maintained two websites entitled www.alanrfeuersteinsucks.com and www.feuersteinandsmithllpsucks.com.[1] These websites contain derogatory statements like "Several interested parties are involved in a con[c]erted effort

---

[1] The jury in this case found by special interrogatory that Simpson published these websites. *See* Official Verdict Form 2, December 7, 2012.

to get attorney Alan R. Feuerstein and his law firm disbarred for chronic dishonesty—check back here to monitor the progress," and "Read what is said about a $350,000 fleecing of Sapphire Bay Condominiums West by Alan R. Feuerstein." *See* http://www.alanrfeuersteinsucks.com (last visited Sept. 30, 2013); www.feuersteinandsmithllpsucks.com (last visited Sept. 30, 2013). The websites direct users to another website containing additional allegations of fraud and "fleecing" by Feuerstein.

In October 2004, Feuerstein filed the instant lawsuit against Simpson, asserting claims for libel and injurious falsehood.[2] On December 7, 2012, a jury returned a verdict in favor of Feuerstein awarding $2.5 million in compensatory damages and $800,000 in punitive damages on the libel claim, and $2.5 million in compensatory damages and $800,000 in punitive damages on the injurious falsehood claim, for a total verdict of $6.6 million.

**DISCUSSION**

When no clear judicial error or "pernicious influence" can be identified, but where "the verdict is so large as to shock the conscience of the court," a court may order the "plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur is refused, to submit to a new trial." *Kazan v. Wolinski*, 721 F.2d 911, 914 (3d Cir. 1983); *see also Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 355 (3d Cir. 2001) (holding "remittitur should be set at the maximum recovery that does not shock the judicial conscience" (internal citation and quotation marks omitted)). In exercising this power, a court must "evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201

---

[2] Feuerstein voluntarily dismissed a third claim for intentional interference with business relations prior to trial.

(3d Cir. 1986); *see also Smith v. Katz*, No. 2010-39, 2013 WL 1182074, at *2 (D.V.I. Mar. 22, 2013). A remittitur is appropriate if the trial judge believes a jury verdict is "clearly unsupported by the evidence" or "exceeds the amount needed to make the plaintiff whole." *Id.* at *2 (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995)).

In examining whether a verdict is excessive in light of the evidence, courts consider the following factors: "(1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of the out-of-pocket expenses; and (6) the amount of compensation demanded in the original complaint." *Lawler v. Laidlaw Carriers Flatbed GP, Inc.,* 875 F. Supp. 2d 443, 447 (E.D. Pa. 2012) (citing *Bey v. Sacks*, 789 A.2d 232, 242 (Pa. Super. Ct. 2001)).[3]

For emotional or non-physical damages, the court evaluates the effects of the incident on the plaintiff and will uphold awards only for long-lasting changes to an individual's mental condition, reputation, or financial situation. *See Dee v. Borough of Dunmore,* 474 F. App'x. 85, 88 (3d Cir. 2012) (upholding a district court's decision to reduce a jury verdict from $150,000 to $50,000 because the evidence did not show long-term or lasting effects from an improper employment suspension); *Glass v. Snellbaker*, No. 05-1971, 2008 WL 4371760, at *20 (D.N.J. Sept. 17, 2008) (reducing compensatory damages for emotional distress in a retaliation suit when the plaintiff employee continued to work, suffered no financial stress, and did not provide any evidence his reputation was diminished). Such long-lasting changes must be sufficiently

---

[3] Since there is no specific rule or provision for remittitur in the Federal Rules of Civil Procedure, the federal courts in the Virgin Islands have relied on factors identified by the Pennsylvania Superior Court in determining whether a verdict is excessive in light of the evidence. *See, e.g.*, *Brown v. McBro Planning & Dev. Co.*, 660 F. Supp. 1333, 1338 (D.V.I. 1987).

3

supported by evidence. *See, e.g.*, *Gagliardo v. Connaught Labs., Inc.*, 311 F. 3d 565 (3d Cir. 2002) (upholding an award of $1.55 million for pain and suffering where the plaintiff proved life-long changes from mental trauma). A court will drastically lower compensatory and punitive damages if the evidence is too speculative to support the claim. *See e.g.*, *Spence*, 806 F.2d at 1199-1201 (3d. Cir. 1986) (remitting $22,060 of a $25,000 compensatory damages award because plaintiff "did not submit sufficient evidence to prove that emotional injuries actually occurred"); *cf. Bevans v. Triumpho*, No. 861/1979, 1980 WL 626210 (V.I. Nov. 13, 1980) (reducing nominal damages but keeping punitive damages the same because the evidence "amply support[ed] the jury award of punitive damages.").

Punitive damages are subject to review under the Due Process Clause. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (same). The Supreme Court has noted the "longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while 'not binding,' is 'instructive,' and that '[s]ingle-digit multipliers are more likely to comport with due process.'" *Philip Morris USA v. Williams*, 549 U.S. 346, 351 (2007) (quoting *State Farm*, 538 U.S. at 425).

In addition to all of the above factors, "comparisons [to other cases] do provide some guidance for courts in considering whether a verdict is excessive." *Williams v. Rene*, 72 F.3d 1096, 1102 n.1 (3d Cir. 1995). Courts have reduced both compensatory and punitive damages as excessive in light of other similar cases. *See Dunn v. HOVIC*, 1 F.3d 1371, 1391 (3d Cir. 1993) (reducing punitive damages to $1 million, despite the trial court's original reduction of punitive

damages from $25 million to $2 million, because even the $2 million figure "greatly exceed[ed] the level of punitive damages awarded in other similar asbestos cases").

In this case, Simpson was found liable for both injurious falsehood and libel, and the jury awarded compensatory and punitive damages for each claim. However, the monetary awards are excessive in light of the evidence presented and the damages awarded in similar cases; hence, Feuerstein must remit a portion of the award or Simpson will be given a new trial on damages.

Claims for injurious falsehood focus "on the loss of the pecuniary value to commercial or property interests." *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 930 (D.V.I. 1997). Thus, compensatory damages for such claims "have consistently been limited to harm to interests of the plaintiff having pecuniary value," and in order to recover, "pecuniary loss to the plaintiff must always be proved." Restatement (Second) of Torts § 623A (1977).

Feuerstein contends that as senior partner and founder of his law firm, he is able to calculate the profits he lost due to Simpson's statements about Feuerstein's reputation and work. He testified at trial he lost seven clients because of Simpson's websites. Valuing the fees these clients would have generated at $75,000 each and factoring in $15,000-worth of total marketing costs to obtain all seven clients, Feuerstein claims the loss is equal to $540,000 for the first year the websites were active. In his closing argument, he asked the jury to find he lost the same $540,000 amount every year for the three and a half years the websites had been active up to that time. However, while income from these seven clients can be calculated, it is not likely a similar loss occurred each year; the evidence presented does not support the assumption that such loss would be consistent from year to year. Furthermore, the $15,000 spent on marketing should not be reimbursed since no evidence was introduced to show that the malicious statements in Simpson's websites rendered such marketing completely ineffective. Thus, the Court finds it is

reasonable to award Feuerstein $525,000 for the loss of the seven clients for the first year the websites were active. Therefore, Feuerstein's injurious falsehood verdict for compensatory damages will be reduced from $2.5 million to $525,000 to reflect the actual pecuniary loss of seven clients. In consideration of the Supreme Court's instruction on punitive damages, the punitive damages award will be reduced to $500,000; any amount above that figure would be excessive.

Libel, while similar to injurious falsehood, protects "the personal reputation of the injured party" and not simply the injured party's pecuniary losses. Restatement (Second) of Torts § 623A. At common law, "general damages have traditionally been awarded not only for harm to reputation that is proved to have occurred, but also, in the absence of this proof, for harm to reputation that would normally be assumed to flow from a defamatory publication of the nature involved." *Id.* § 621. However, Feuerstein cannot recover twice for the pecuniary loss of his seven clients because "[a]ction may be brought in the same suit for both [defamation and injurious falsehood] *so long as the damages are not duplicated.*" *Id*. (emphasis added).

In this case, the Court instructed the jury that compensatory damages for the libel claim could be awarded for "mental anguish, shock and discomfort, as well as damages for his reputation that he suffered because of the defendant's conduct." Trial Tr. 192, Dec. 7, 2012. The Court further explained, "the law does not require that the plaintiff prove the amount of the losses with mathematical precision, but only with such definiteness and accuracy as the circumstances permit." *Id.* For punitive damages, the Court instructed the jury that it could award

such damages if it found by clear and convincing evidence that the defendant "acted with actual malice in publishing . . . the defamation in question." *Id.* at 193.[4]

Feuerstein's claim of loss to reputation is purely theoretical and not tied to any actual harm. Feuerstein admitted pain and suffering was difficult to calculate, *id.* at 140-41, but claimed the lawsuit "has cost him a lot of money, and it has cost the Virgin Islands a chance for a lot of businesses that could have come to us and could have created jobs in our community and could have had moneys circulating in our economy," *id.* at 139. However, Feuerstein has not produced any substantive evidence to support his arguments regarding the destruction of his 35-year reputation or diminished revenues above the loss of seven clients. Feuerstein did not stop working at any point after the websites became active, and he continues to maintain his law practice.

Further, the jury's award for the libel claim far exceeds the awards for typical defamation claims in the Virgin Islands and the Third Circuit, especially given the speculative nature of the injuries. For example, in *Ross v. Bricker*, the Court approved a trial court's $4,000 compensatory damages award in a defamation case in which the plaintiff's former dental assistant made statements calling into question the plaintiff's professionalism and conduct in obtaining patients. 770 F. Supp. 1038, 1046 (D.V.I. 1991). The trial court found the plaintiff suffered actual injury in the form of emotional distress, and the plaintiff's testimony about shame, humiliation, embarrassment, and sleepless nights in combination with the loss of a patient's business was enough to convince the court that "the evidence sufficed for some award of compensatory damages." *Id.* The Court noted, however, that the $4,000 award was "on the high end of the

---

[4] The jury ultimately found that Simpson had "acted with actual malice in committing the tort of libel," and therefore, punitive damages were appropriate. *See* Official Verdict Form 2, December 7, 2012.

scale." *Id*; *see also Rudovsky v. W. Publ'g Corp.*, No. 09-00727, 2011 WL 1155159, at *2 (E.D. Pa. Mar. 30, 2011) (affirming $90,000 of compensatory damages for each plaintiff in a defamation and false light case); *Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F. Supp. 2d 452, 467 (E.D. Pa. 2010) (upholding jury award of $30,000 of actual damages in a Fair Credit Reporting Act case, which included defamation claims); *Clemente v. Espinosa*, 749 F. Supp. 672, 681 (E.D. Pa. 1990) (awarding $10,000 in damages in a defamation case involving allegations about plaintiff's reputation as a lawyer because, although the plaintiff reported embarrassment, humiliation, anxiety, and insomnia, he did not prove any loss of business and continued to practice law).

Thus, the Court will reduce Feuerstein's libel verdict for compensatory damages from $2.5 million to $50,000 to make the award consistent with other defamation awards in similar cases and more accurately reflect the evidence presented regarding Feuerstein's pain, suffering, and mental anguish. Punitive damages for this claim will be decreased from $800,000 to $100,000 to comport with this Court's precedence and the Supreme Court's guidance on punitive damage awards. *See e.g.*, *Rudovsky*, 2011 WL 1155159, at *2 (reducing punitive damages from $2.5 million to $110,000 for each plaintiff in light of a $90,000 compensatory damage award).

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.